UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

REINA SANTIAGO ORTIZ,

                            Plaintiff,

           v.

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.

_____

<u>DECISION & ORDER</u>

19-CV-0538MWP

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Reina Santiago Ortiz ("Santiago Ortiz") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 15).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 11). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## DISCUSSION

**I.      Standard of Review**

        This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards.  *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted).  Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence."  *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive").  Substantial evidence is defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

        To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be

sustained "even where substantial evidence may support the claimant's position and despite the

fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v.*

*Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d

60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is

unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must

employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)

(*per curiam*). The five steps are:

> (1)   whether the claimant is currently engaged in substantial gainful activity;
>
> (2)   if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)   if so, whether any of the claimant's severe impairments meets or equals one of the Listings in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his or her past work; and
>
> (5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467.

"The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.  **Procedural History**

Santiago Ortiz protectively filed for DIB on September 17, 2012.  (Tr. 377).[1] That application was denied by an ALJ on September 19, 2014.  (Tr. 187-209).  On March 4, 2016, the Appeals Council entered a remand order instructing the ALJ: (1) to consider further Santiago Ortiz's maximum RFC based upon the evidence of record; and (2) to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Santiago Ortiz's occupational base.  (Tr. 209-11).  Following remand, on July 20, 2018, a second ALJ concluded that Santiago Ortiz was not disabled.  (Tr. 24-38).  Santiago Ortiz commenced this lawsuit on April 25, 2019.  (Docket # 1).

III.  **The ALJ's Decision**

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims.  (Tr. 24-38).  At step one of the process, the ALJ found that Santiago Ortiz had not engaged in substantial gainful activity between June 7, 2011, the alleged onset date, and December 31, 2016, her date last insured.  (*Id.*).  At step two, the ALJ concluded that Santiago Ortiz had the severe impairments of migraine headaches, fibromyalgia, anxiety with panic disorder, and depression.  (*Id.*).  At step three, the ALJ determined that Santiago Ortiz did not have an impairment (or combination of impairments) that met or medically equaled one of the

---

[1]  The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

listed impairments. (*Id.*). With respect to Santiago Ortiz's mental limitations, the ALJ found

that she suffered from moderate limitations in interacting with others, concentrating, persisting or

maintaining pace, and adapting or managing oneself, and mild limitations in understanding,

remembering, or applying information. (*Id.*). The ALJ concluded that Santiago Ortiz had the

RFC to perform light work requiring her to occasionally balance, stoop, kneel, crouch, crawl,

climb ramps, stairs, ladders, ropes, or scaffolds, operate a motor vehicle, or be exposed to

unprotected heights and moving mechanical parts. (*Id.*). Additionally, the ALJ concluded that

Santiago Ortiz had a limited ability to communicate in English and could perform jobs involving

only simple work-related decisions and occasional interaction with supervisors, coworkers, and

the general public. (*Id.*). At steps four and five, the ALJ determined that Santiago Ortiz would

be unable to perform past relevant work but that other jobs existed in the national economy that

Santiago Ortiz could perform, including the positions of stock checker, housekeeper cleaner, and

injection molding machine tender. (*Id.*). Accordingly, the ALJ found that Santiago Ortiz was

not disabled. (*Id.*).


IV.     **Santiago Ortiz's Contentions**

        Santiago Ortiz contends that the ALJ's determination that she is not disabled is

not supported by substantial evidence and is the product of legal error. (Docket ## 10-1, 14).

First, Santiago Ortiz maintains that the ALJ applied an incorrect standard when determining that

her migraines were not medically equivalent to the requirements for Listing 11.02 (epilepsy) and

otherwise provided an insufficient rationale for his step-three finding. (Docket ## 10-1 at 33-36;

14 at 2-6). Second, Santiago Ortiz argues that the ALJ improperly discounted the opinion of

Santiago Ortiz's primary care physician, Dr. Biondolillo. (Docket ## 10-1 at 36-38; 14 at 6-8).

Third, Santiago Ortiz contends that the ALJ erred by requiring objective evidence to support her subjective complaints that she suffered from pain caused by fibromyalgia.  (Docket # 10-1 at 38-40).  Finally, Santiago Ortiz challenges the ALJ's determination on the grounds that it was based upon mischaracterizations of the evidence.  (Docket ## 10-1 at 40-41; 14 at 8-9).

## V.      Analysis

### A.      The ALJ's Step-Three Determination

I turn first to Santiago Ortiz's contention that the ALJ misapplied the medical equivalency standard when determining whether her migraines were equivalent to the requirements for Listing 11.02 (epilepsy).  (Docket ## 10-1 at 33-36; 14 at 2-6).  In addition, Santiago Ortiz points to record evidence purportedly demonstrating that her migraines were medically equivalent to that listing.  (*Id.*).  The Commissioner responds that any error by the ALJ was harmless because Santiago Ortiz has not demonstrated that her migraines were medically equivalent to Listing 11.02.  (Docket # 11-1 at 6-8).

At step three of the sequential evaluation process, an ALJ is required to analyze the claimant's medically determinable impairments to determine whether they meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  *See* 20 C.F.R. § 416.920(a)(4)(iii).  "The purpose of the [l]istings is to streamline the administrative process by identifying those impairments that are so severe they would always be disabling." *Simmons v. Colvin*, 2016 WL 3866620, *2 (W.D.N.Y. 2016).  Accordingly, "a claimant is entitled to a conclusive presumption that [she] is disabled if [her] impairment meets or is medically equivalent to an impairment listed in [the listings]."  *Carter v. Colvin*, 2016 WL 3360559, *11 (E.D.N.Y. 2016).

6

In order to meet a listed impairment, a claimant "must show that [her] impairment meets or equals *all* specified criteria of a listing[;] . . . '[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). An impairment that does not meet the criteria of a listing may nevertheless medically equal a listing's criteria. *See* 20 C.F.R. § 416.926(a). To establish medical equivalence, a claimant must demonstrate that her impairment is "at least equal in severity and duration" to each of the criteria of the relevant listing. *Id.* If an impairment is not specified in the listings, the ALJ must compare the medical findings of the claimant's impairment to the criteria of "closely analogous listed impairments" to determine whether "the findings related to [the claimant's] impairment[s] are at least of equal medical significance to those of a listed impairment." *See* 20 C.F.R. 416.926(b)(2); *see also* SSR 17-2p, 2017 WL 3928306, *2 (March 27, 2017).[2] The claimant bears the burden to prove that her impairments meet or equal a listed impairment. *See Naegele v. Barnhart*, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006).

An ALJ is not required to "articulate specific evidence supporting his or her finding that [a claimant's] impairment[] does not medically equal a listed impairment." *See* SSR 17-2p, 2017 WL 3928306 at *4. Rather, "a statement that the [claimant's] impairment[] does not medically equal a listed impairment" will generally constitute sufficient articulation for the ALJ's finding. *Id.* The ALJ's articulation of the reasons for his or her conclusion that the claimant is not disabled in the remaining steps of the sequential evaluation should "provide a rationale that is sufficient for a subsequent reviewer or court to determine the basis" for the

---

[2] "Although SSRs do not have the same force and effect as law, they are binding on all components of the Social Security Administration in accordance with 20 C.F.R. § 402.35(b)(1)." *Young v. Comm'r of Soc. Sec.*, 2020 WL 2028257 (W.D.N.Y. 2020).

step-three medical equivalence conclusion.  *Id.*  Nevertheless, the ALJ's step-three conclusion

must be supported by substantial evidence and must be articulated elsewhere in the decision in a

manner that "permits a court to understand and review the ALJ's step-three conclusions for

substantial evidence."  *See Hall v. Saul*, 2019 WL 5085427, *8 (N.D. Iowa 2019) ("[t]he fact that

SSR 17-2p and the case law allow analysis and reasoning articulated at later steps to be sufficient

does not conflict with the Social Security Act's requirement that any decision . . . must 'contain

. . . in understandable language . . . [the] determination and the reason or reasons upon which it is

based'") (quoting 42 U.S.C. § 405(b)(1)); *Owens v. Saul*, 2019 WL 7900070, *13 (D.S.C. 2019)

("SSR 17-2p does not abrogate the ALJ's duty to support her decision with substantial

evidence"), *report and recommendation adopted by*, 2020 WL 635798 (D.S.C. 2020).

   Here, the ALJ concluded, and the parties do not dispute, that although there is no

listing for migraines, the most closely analogous listed impairment is Listing 11.02 (epilepsy).

(Tr. 28; Docket ## 10-1 at 33; 11-1 at 7).  Listing 11.02 provides as follows:

> 11.02 Epilepsy, documented by a detailed description of a typical
> seizure and characterized by A, B, C, or D:
>
> A. Generalized tonic-clonic seizures . . . , occurring at least once a
> month for at least 3 consecutive months . . . despite adherence to
> prescribed treatment; or
>
> B. Dyscognitive seizures . . . , occurring at least once a week for at
> least 3 consecutive months . . . despite adherence to prescribed
> treatment; or
>
> C. Generalized tonic-clonic seizures . . . , occurring at least once
> every 2 months for at least 4 consecutive months . . . despite
> adherence to prescribed treatment . . . ; and a marked limitation in
> one of the following:
>
> 1. Physical functioning . . . ; or
> 2. Understanding, remembering, or applying information . . . ; or
> 3. Interacting with others . . . ; or
> 4. Concentrating, persisting, or maintaining pace . . . ; or

> 5.      Adapting or managing oneself . . . ; or
>
> D. Dyscognitive seizures . . . , occurring at least once every 2
> weeks for at least 3 consecutive months . . . despite adherence to
> prescribed treatment . . . ; and a marked limitation in one of the
> following:
>
> 1.      Physical functioning . . . ; or
> 2.      Understanding, remembering, or applying information . . . ; or
> 3.      Interacting with others . . . ; or
> 4.      Concentrating, persisting, or maintaining pace . . . ; or
> 5.      Adapting or managing oneself . . . .

20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 11.02(A) (2018).

In his decision, the ALJ explicitly considered Listing 11.02 and concluded that the evidence in the record was insufficient to establish that Santiago Ortiz's migraines were medically equivalent to the listing. (Tr. 28). Specifically, the ALJ stated:

> There is no listing for migraine headaches, but this impairment has
> been considered under the neurological disorders of [L]isting
> 11.00. However, the evidence fails to show that the claimant's
> migraine headaches result in generalized tonic-clonic seizures, or
> dyscognitive seizures occurring at a frequency contemplated by the
> listing despite adherence to prescribed treatment, and a marked
> limitation in physical functioning, understanding, remembering
> and applying information, interacting with others, concentrating,
> persisting and maintaining pace and adapting and managing
> oneself. *Thus*, the listings criteria are not met or equaled.

(*Id.*) (emphasis provided).

Santiago Ortiz maintains that the ALJ erred by improperly requiring evidence establishing that she suffered from seizures – an error that demonstrates his misapplication of the medical equivalency analysis under Listing 11.02 in cases involving migraines. (Docket ## 10-1 at 33-36; 14 at 2-6). I agree.

The Social Security Administration ("SSA") has issued guidance in several forms pertaining to evaluation of medical equivalency in cases involving migraines. *See* SSR 19-4p,

2019 WL 4169635 (Aug. 26, 2019); *Crewe v. Comm'r of Soc. Sec.*, 2019 WL 1856260, *4

(W.D.N.Y. 2019) (citing Social Security Program Operations Manual System ("POMS"

DI § 24505.015, *superseded* by POMS DI § 24508.010 (effective February 13, 2018)) and

*Worley v. Berryhill*, 2019 WL 1272540, *4 (E.D.N.C.) (citing SSA National Q&A 09-036

(providing guidance related to Listing 11.03, the predecessor to 11.02)), *report and*

*recommendation adopted by*, 2019 WL 1264870 (E.D.N.C. 2019).   Although none of the

guidance appears to have been in effect when the ALJ issued his decision, federal courts have

considered and relied upon it in reviewing step-three determinations involving migraines.   *See*,

*e.g.*, *Lerouge v. Saul*, 2020 WL 905756, *8 (E.D. Mo. 2020) (considering SSR 19-4p); *Crewe v.*

*Comm'r of Soc. Sec.*, 2019 WL 1856260 at *4 (considering POMS § DI 24505.015); *Worley v.*

*Berryhill*, 2019 WL 1272540 at *4 (considering SSA Q&A 09-036 and POMS § DI 24505.015);

*Rader v. Comm'r of Soc. Sec.*, 2018 WL 4087988, *6 (D. Idaho 2018) (same).   This guidance

and the caselaw applying it make clear that evidence of seizures is not required to establish that

migraines are medically equivalent to Listing 11.02.   *See* SSR 19-4p, 2019 WL 4169635 at *7

("[t]o evaluate whether a primary headache disorder is equal in severity and duration to the

criteria in 11.02B, we consider: a detailed description from an [acceptable medical source] of a

typical headache event . . . ; the frequency of headache events; adherence to prescribed

treatment; side effects of treatment . . . ; and limitations in functioning that may be associated

with the primary headache disorder or effects of its treatment, such as interference with activity

during the day"); *Crewe*, 2019 WL 1856260 at *4 (medical equivalency may be found where

claimant has migraine headaches despite treatment at least twice weekly lasting from 4 to 72

hours and accompanied by aura, alteration of awareness, intense throbbing, severe pain, nausea

and photophobia requiring rest in a quiet, dark room for relief) (citing POMS § DI 24505.015);

*Mesecher v. Berryhill*, 2017 WL 998373, *4 (N.D. Tex. 2017) (medical equivalency may be found where a claimant suffers from migraine headaches occurring more than once a week accompanied by alteration of awareness or "significant interference with activity during the day that may result from, e.g., a need for a darkened, quiet room; lying down without moving; or a sleep disturbance that impacts on daytime activities") (citing SSA Q&A 09-036); *see also Fortner v. Saul*, 2020 WL 532969, *3 (D.S.C.) ("courts have held that a migraine impairment can be functionally equivalent to [Listing 11.02] where severe headaches or migraines occur at least once per week for three consecutive months despite adherence to prescribed treatment"), *report and recommendation adopted by*, 2020 WL 528174 (D.S.C. 2020); *Rader v. Comm'r of Soc. Sec.*, 2018 WL 4087988 at *6 ("[b]oiled down, Listing 11.02 requires three main elements: (1) a detailed documentation of pain and resultant symptoms; (2) occurrence of the impairment at least twice a week during the period of three consecutive months of prescribed treatment; and (3) that the impairment significantly alters a claimant's awareness or daily activity").

The ALJ's step-three determination reflects that he fundamentally misapprehended the medical equivalency evaluation by requiring evidence that Santiago Ortiz experienced seizures.  Although his finding that the evidence did not demonstrate that Santiago Ortiz experienced seizures may support his conclusion that her migraine impairment did not *meet* Listing 11.02, it does not support his conclusion that the impairment was not *medically equivalent* to Listing 11.02.  *See Owens v. Saul*, 2019 WL 7900070 at *13 ("[t]he ALJ considered only whether [p]laintiff had . . . documented evidence of generalized tonic-clonic or dyscognitive seizures[;] . . . [s]he evaluated whether [p]laintiff's impairment met the precise requirements of Listing 11.02 and failed to consider whether his symptoms and limitations were of equivalent severity to Listing 11.02").  Simply stated, the ALJ's conclusion that the migraine

impairment was not medically equivalent to Listing 11.02 because of the absence of seizure

evidence misconstrued the equivalency standard and constituted error.  *See Fortner v. Saul*, 2020

WL 532969 at *4 ("a finding by the ALJ that [p]laintiff did not suffer from seizures is not

determinative of this issue, as that is not the standard to be applied[;] . . . [t]he question is not

whether [p]laintiff suffers from seizures once a week for at least three months, but whether she

suffers from more than one medically severe migraine headache per week despite at least three

months of prescribed treatment") (internal quotations omitted); *Amy L. M. v. Berryhill*, 2018 WL

6241381, *6 (S.D. Ind. 2018) (ALJ's statement that the record failed "'to demonstrate evidence

of epilepsy or epileptic seizures' . . . cannot support a decision that migraines headaches do not

medically equal the Listing[;] [t]here should be at least some minimal comparison and

explanation regarding equivalency").

       Nor do the ALJ's findings during the remainder of the sequential evaluation

permit me to conclude that the ALJ's step-three error was harmless.  *See Sweeney v. Colvin*,

2015 WL 11237311, *8 n.3 (D. Conn.) (any error at step three was harmless; "[a]lthough the

ALJ should have been clearer in his analysis at this step, the evidence of record permits the court

to glean the rationale of the ALJ's decision[,] . . . substantial evidence supports the ALJ's

findings that plaintiff did not meet a listed impairment[,] [and] . . . remanding this case so that

the ALJ could set forth specific reasons for his Step Three finding would be a futile exercise")

(quotations and brackets omitted), *report and recommendation adopted by*, 2015 WL 5684024

(D. Conn. 2015); *Darling v. Astrue*, 2012 WL 642459, *5 (D. Vt.) ("any error in the ALJ's

failure to discuss his [medical equivalency] reasoning is harmless because his finding as to

medical equivalency is supported by substantial evidence), *report and recommendation adopted

by*, 2012 WL 640044 (D. Vt. 2012).  Rather, review of the medical records demonstrates that

Santiago Ortiz had a longstanding history of treatment for frequent and severe migraines, and the ALJ's abbreviated discussion of this evidence does not allow me to conclude that the outcome would have been the same had the ALJ applied the proper medical equivalency standard.

The medical records demonstrate that Santiago Ortiz complained of migraine headaches, which she attributed to a traumatic brain injury that she suffered during a motor vehicle accident in 2005. (Tr. 499, 620). Beginning in 2012, and continuing through the time of the administrative hearing, Santiago Ortiz received ongoing neurological treatment for her headaches from providers at DENT Neurologic Institute. (Tr. 849-920, 990-1012, 1136-38). The medical records describe her headaches as severe and throbbing, and accompanied by nausea, photophobia, sonophobia, lightheadedness, double vision, and anorexia. (*See*, *e.g.*, Tr. 539, 706, 898, 995, 998). A September 22, 2012 MRI of her brain revealed abnormal findings, including hyperintensities in the right and left sub frontal regions and the right anterior temporal lobe, which were consistent with a prior head injury. (Tr. 507-508, 517). Another MRI dated June 22, 2013 demonstrated bilateral frontal encephalomalacia, also consistent with traumatic brain injury. (Tr. 862). Her neurological examinations were largely normal, although she frequently had positive Tinel sign over her occipital nerves bilaterally and palpation or tapping of those areas reproduced the typical pattern of headache pain. (Tr. 707, 892, 894, 896, 899, 902).

Over the course of approximately six years, Santiago Ortiz was prescribed a variety of medications and injections to attempt to manage her migraines. (Tr. 849-920, 990-1012, 1136-38). Several different prophylactic medications, including amitriptyline, Topamax, Skelaxin, Verapamil, and Topiramate, proved to be ineffective in adequately reducing the frequency of her migraines, and several abortive medications, including Sumavel, Naproxen,

Treximet, Maxalt, sumatriptan, naratriptan, Zoming, Migranal spray, and Toradol injections, proved ineffective in adequately alleviating the severity of her migraines once they began. (Tr. 856, 879, 889, 892-96, 905-909, 915, 998; *see also* Tr. 888 ("[s]he has failed on steroid course, infusion, and multiple preventive medications[,] . . . [and] has tried multiple abortive agents as well")). Beginning in October 2012, Santiago Ortiz was administered occipital nerve blocks, which initially provided some relief, resulting in several migraine-free weeks after she received the block. (Tr. 890, 895-902).

Although the occipital nerve blocks were initially successful, their efficacy diminished over time. (Tr. 885, 888). Beginning in July 2013, her providers at DENT began administering prophylactic Botox injections every three months. (Tr. 857-58, 866-81, 883-84). Like the nerve blocks, the Botox injections were initially helpful in controlling Santiago Ortiz's migraines, resulting in periods of migraine-free days and an overall decrease in the severity of her migraines. (*Id.*). After she was diagnosed with fibromyalgia, her treatment providers also began administering monthly trigger point injections to address her chronic myofascial pain and migraines. (Tr. 854-65).

Despite taking a daily prophylactic and an abortive pain medication upon migraine onset, and receiving monthly trigger point injections and Botox injections every three months, Santiago Ortiz continued to experience two to three headaches per week. (Tr. 849-56, 995-1000, 1003-1004). Given the "continued high frequency" of migraines, her provider suggested that she try a sphenopalatine ganglion block. (Tr. 1000). Some of her headaches were so severe that she had to seek infusion therapy, either from DENT or urgent care facilities. (Tr. 990, 1004, 1012). At the time of the administrative hearing, medical records suggest that

Santiago Ortiz continued to experience headaches at least six to eight times per month. (Tr. 1136-38).

In two paragraphs of his decision, the ALJ summarized some of Santiago Ortiz's migraine-related treatment history, including that she reportedly continued to suffer from migraines despite prophylactic and abortive medications, occipital nerve blocks, and Botox injections. (Tr. 32). According to the ALJ, treatment records suggested that, despite some improvement with treatment,[3] Santiago Ortiz reported to her treatment providers that she continued to experience only fifteen headache-free days per month. (*Id.*). He also noted the opinion of state consulting examiner Donna Miller, D.O., that despite her migraine headaches Santiago Ortiz had no significant physical limitations.[4] (*Id.*). Additionally, he considered that an MRI of her brain "showed no significant findings but bilateral frontal encephalomalacia consistent with prior trauma" and that neurological examinations generally resulted in normal findings. (*Id.*).

Despite acknowledging the record evidence reflecting that Santiago Ortiz continued to report experiencing migraines despite treatment, the ALJ concluded that she had the RFC to perform simple, light work with some postural limitations, occasional exposure to work-place hazards, and occasional interaction with others, and that she was not disabled.

---

[3] For instance, the ALJ noted that in March 2012 Santiago Ortiz reported that Treximet, the abortive medication she had been prescribed, provided her "complete relief." (*Id.* (citing Tr. 723)). He also noted that after her first nerve block, Santiago Ortiz reported that it successfully prevented migraines for two weeks. (Tr. 32 (citing Tr. 701)). Nevertheless, as described above, the medical records demonstrate that Santiago Ortiz reported that the efficacy of Treximet and the occipital nerve blocks diminished over time, prompting her providers to suggest alternate treatment options, none of which appear to have completely resolved her migraines. (*See*, *e.g.*, Tr. 885, 888, 909).

[4] Despite considering Miller's opinion in connection with his discussion of the record evidence relating to Santiago Ortiz's migraines, elsewhere in the opinion the ALJ gave Miller's opinion that Santiago Ortiz had no physical limitations "little weight," explaining that it failed to "adequately consider" Santiago Ortiz's migraines and the limitations that they caused. (Tr. 35). However, as discussed herein, other than identifying some environmental and postural limitations, the ALJ's decision fails to explain what limitations were actually caused by Santiago Ortiz's migraines, nor does he explain how the RFC that he formulated accounts for those limitations.

(Tr. 30-37). The decision suggests that the workplace hazard limitations, and perhaps some of the postural limitations, were meant to accommodate Santiago Ortiz's migraine symptoms. (*See* Tr. 34-35). The ALJ's decision lacks any explanation from which this Court may discern whether any of the remaining limitations were related to Santiago Ortiz's migraines.

The medical record suggests that Santiago Ortiz's migraines caused her to suffer severe pain for several hours at a time, undoubtedly affecting her ability to stay on task and maintain a schedule. (*See*, *e.g.*, Tr. 140-41). The RFC, however, does not appear to contain any limitations to account for impaired concentration or attendance. The absence of such limitations is notable in view of the vocational expert's testimony that a person who was absent more than one day a month or off-task more than twenty percent of the time would be unable to maintain employment. (Tr. 167-68).

It is unclear whether the ALJ concluded that postural and environmental limitations in the RFC accounted for limitations caused by Santiago Ortiz's migraines and, if so, what the basis was for that conclusion. The lack of an any explanation to tie the ALJ's summary of the migraine-related record evidence to his RFC conclusions deprives this Court of the ability to meaningfully review the ALJ's determinations. *See Piper v. Comm'r of Soc. Sec.*, 2020 WL 4499530, *3 (W.D.N.Y. 2020) ("[d]espite concluding that [plaintiff] suffers from migraines, . . . the ALJ fails to explain how his RFC findings account for these conditions[;] . . . [t]he dearth of analysis frustrates any meaningful review"); *Morales v. Comm'r of Soc. Sec.*, 2020 WL 2078796, *5 (W.D.N.Y. 2020) ("[t]his [c]ourt cannot follow the ALJ's reasoning in making this determination"); *Cichocki v. Colvin*, 2018 WL 6444123, *3 (W.D.N.Y. 2018) ("[t]he ALJ's failure to include limitations resulting from plaintiff's migraine headaches in his assessment of plaintiff's RFC constitutes legal error and is not supported by substantial evidence in the

record[;] . . . [r]egardless of this decrease in frequency, 2-3 migraines per week remains

significant"); *Davila v. Comm'r of Soc. Sec.*, 2018 WL 5017748, *22 (E.D.N.Y. 2018) ("the

problem with the . . . [ALJ's decision] . . . is that the . . . discussion of plaintiff's migraines in its

RFC analysis is so sparse as to make it impossible for the court to determine whether substantial

evidence supports the ALJ's determination").

        In sum, the ALJ's summary discussion of Santiago Ortiz's migraine condition

during the remainder of the sequential evaluation does not enable me to conclude that if the ALJ

had applied the proper medical equivalency standard, he would have concluded that Santiago

Ortiz's migraines were not medically equivalent to Listing 11.02; for this reason, remand is

warranted.  *See, e.g., Owens*, 2019 WL 7900070 at *13 (remanding where "the ALJ's step three

finding . . . of equivalence under the listing [was] based on a fundamental misunderstanding of

the requirements[,] [and] [f]urther evaluation of the ALJ's findings at later steps provides no

more adequate rationale"); *Amy L. M. v. Berryhill*, 2018 WL 6241381 at *7 ("[t]he brief

discussion about [plaintiff's] emergency room visits and treatment for migraines headaches in

other sections of the ALJ's written decision did not provide any analysis to compare the

migraines to any Listed Impairment in order to support the Step 3 determination"); *see also

Fortner*, 2020 WL 532969 at *4 ("in light of the ALJ's failure to consider [p]laintiff's migraine

impairment under a Listing 11.02 equivalency analysis, her failure to make a finding as to the

frequency of [p]laintiff's migraines, and her otherwise perfunctory discussion of this condition,

the undersigned cannot predict with great confidence that the result on remand would be the

same if these issues were addressed") (internal quotations omitted).

B.     **Santiago Ortiz's Remaining Contentions**

Because the ALJ's reevaluation at step three may affect his analysis of the remaining steps in the sequential evaluation, I decline to reach Santiago Ortiz's remaining challenges.  *See Yeomas v. Colvin*, 2015 WL 1021796 (W.D.N.Y. 2015).


**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (**Docket # 11**) is **DENIED**, and Santiago Ortiz's motion for judgment on the pleadings (**Docket # 10**) is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**


  _____
  *s/Marian W. Payson*
  MARIAN W. PAYSON
  United States Magistrate Judge

Dated: Rochester, New York
       September 29, 2020